**NOT FOR PUBLICATION**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In Re:<br><br>John B. Canuso, Sr.,<br><br>Debtor. | Case No.:   18-23619-ABA<br><br>Adv. No.:   20-1043-ABA |
| Andrew Sklar, trustee,<br><br>Plaintiff<br><br>v.<br><br>Hopewell at West Main, LLC; Robert DiMarco; and Hopewell Nursery, Inc.<br><br>Defendants. | Chapter:   7<br><br>Judge:   Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is a Motion for Summary Judgment filed by the plaintiff, the chapter 7 trustee. Doc. No. 30. Hopewell at West Main, LLC ("Main") and Robert DiMarco[1] oppose. Doc. No. 31. Hopewell Nursery, Inc. ("Nursery") did not respond. The trustee seeks a declaration that (1) the debtor, John B. Canuso, Sr. is the owner of the shares in Hopewell Nursery, Inc. (2) the "Mandatory Event" clauses in the Assignment Agreements are *ipso facto* clauses and are statutorily invalid and unenforceable, and (3) the trustee is entitled to avoid any interest of the defendants in the shares as a levying judgment creditor pursuant to 11 U.S.C. § 544. The motion will be granted.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(K) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the

---

[1] The other defendants have previously agreed that the chapter 7 trustee incorrectly included Robert DiMarco as a defendant. A stipulation of dismissal of Robert, promised by Main in its Answer to the Complaint, Doc. No. 5, p. 2, ¶ 4, has not been filed (or a Motion to Dismiss him, if no consent) despite the court including this footnote in its prior opinion. And, meanwhile, no party joined Wayne DiMarco, the person all agree is the correct defendant.

bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

The trustee filed this adversary proceeding on January 27, 2020 to determine the ownership of 250 shares of the stock of Nursery among conflicting assertions of the defendants and Mr. Canuso. Doc. No. 1. On February 13, 2020, Main filed an answer. Doc. No. 5. On February 28, 2020, Nursery filed an answer and a crossclaim against Main and Robert DiMarco. Doc. No. 6. On March 19, 2020, Main filed an answer to the crossclaim and a counterclaim against Nursery. Doc. No. 7. On March 24, 2020, Nursery answered the counterclaim. Doc. No. 8.

On August 12, 2020, Nursery filed a Motion for Summary judgment on its cross claim and against Main's counterclaim. Doc. No. 13. On August 31, 2020, Main and Robert DiMarco filed a response, and Main filed a Cross Motion for Summary Judgment on its crossclaim and dismissing Nursery's counterclaim. Doc. Nos. 14, 15. The trustee filed a response on September 17, 2020. Doc. No. 17. On October 9, 2020, Nursery filed a response. Doc. Nos. 18, 19.

On November 2, 2020, this court issued a Memorandum Decision and Order, granting Nursery's Motion for Summary Judgment to the extent it sought a declaration that Mr. Canuso purchased shares of Nursery individually but denied it to the extent that Nursery sought a declaration that the shares could not be transferred. Doc. Nos. 20, 21. This court denied Main's Motion for Summary Judgment to the extent that it sought declarations that it had been and continued to be the disclosed principal of its agent, Mr. Canuso, and is the real party in interest and owner of the 250 shares in Nursery; that it always had the right to designate a qualified individual to succeed the debtor as the nominal owner of the 250 shares in Nursery; that it had designated Wayne DiMarco as the successor, qualified nominal owner of the 250 shares in Nursery; and that Wayne possessed all rights and privileges as the shareholder that have accrued since the 250 shares were first issued by Nursery. *Id.*

On April 20, 2021, the trustee filed his Motion for Summary Judgment. Doc. No. 30. Main and Robert DiMarco responded on May 3, 2021 and Nursery responded to Main on May 5, 2021. Doc. Nos. 31, 32. A hearing was held May 25, 2021 at which counsel for the trustee and Main appeared and made arguments.

The matter is now ripe for disposition.

## DISCUSSION

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), incorporated into adversary proceedings by Fed. R. Bankr. P. 7056. At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine

whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F.Supp.2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F.Supp.2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254–55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). An issue of fact is genuine if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is material if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248–50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322–23.

This court previously held that there was a genuine issue of material fact whether the Assignment Agreement was authentic. Consistent with case law on the standard to be met on a Motion for Summary Judgment, the court will infer that the Assignment Agreements—both the shorter, unexecuted one, and the longer, executed one—are authentic.[2] As will be seen, however, this assumption does not help Main.

### A. Current ownership of the shares

The trustee starts with the contention that this court previously decided that Mr. Canuso owns the shares and did not transfer them. That is not entirely accurate. Though the court's previous opinion so stated at its beginning, the remainder of the opinion reflected that there was a genuine issue of material fact whether the Assignment Agreement, pursuant to which Main argued Mr. Canuso transferred the shares, was legitimate. More importantly, while the court's Order granted Nursery's motion for a declaration that Mr. Canuso purchased the shares of Nursery individually, it denied the motion to the extent it sought a declaration that Mr. Canuso could not

---

[2] As the court writes for the parties only, it will not repeat the facts regarding the two Assignment Agreements.

transfer the shares. The court further denied Main's motion, *inter alia*, that it was the real party in interest and owner of the 250 shares in Nursery and that it had designated Wayne DiMarco as the successor, qualified nominal owner of the 250 shares in Nursery. *Id.* In other words, the court held in the Order that Mr. Canuso purchased the shares for his own account and could transfer them, but there was a genuine issue of material fact—of the Assignment Agreement's authenticity and implementation—as to whether he actually had transferred them.

What a court orders, not what it might conclude in its opinion, controls. *United States v. Hark*, 320 U.S. 531, 534–35 (1944) ("Where, as here, a formal judgment is signed by the judge, this is prima facie the decision or judgment rather than a statement in an opinion or a docket entry.") (footnote omitted); *Friedland v. Zickefoose*, 538 Fed. Appx. 122, 124 (3d Cir. 2013) ("'In the event of a conflict between the opinion and judgment, the judgment controls.'") (quoting *Eakin v. Continental Ill. Nat'l Bank & Trust Co.*, 875 F.2d 114, 118 (7th Cir. 1989)). As one court explained, an opinion is a statement of reasons supporting a judgment; if an opinion awards something that the judgment does not, then "the opinion is reduced to dictum; only the judgment need be obeyed." *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 527 (7th Cir. 1988). Accordingly, the trustee's argument that the court in its prior opinion "has already declared that the Debtor owned the Shares as of the Petition Date" goes too far as it is the court's order, not its opinion, that is controlling, and that order reflected the conclusions that Mr. Canuso originally purchased the shares individually, that Main was not the real owner, and that *there was a genuine issue of material fact* whether he assigned the shares.

Thus, a conclusion in the opinion that Mr. Canuso <u>now</u> owns the shares is not "law of the case," as it left open whether Main could provide evidence of an assignment of the shares. However, as will be seen, none of Main's arguments support that the shares were transferred or still could be transferred.

**B. Any transfer of the shares triggered by the filing of the bankruptcy case is unenforceable**

The trustee argues that the Mandatory Event clause in the Assignment Agreements is an invalid and unenforceable *ipso facto* clause. He cites section 541(c)(1)(B) as providing:

> Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
>> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1)(B).

Section 541(a)(1) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" are property of the estate. Thus, if Mr. Canuso owned the shares as of the commencement of his chapter 11 case, then to the extent that Main contended that the shares were then automatically assigned pursuant to the Assignment Agreement's Mandatory Event clause, the trustee is correct that the transfer would be ineffective. *Matter of Knapp*, 137 B.R. 582, 585 (Bankr. D.N.J. 1992) ("Since the only reason for revocation testified to by the plaintiff's representative was the filing of the petition in bankruptcy, that revocation could not be effected in light of § 541(c)(1)(B)."). *See In re Denman*, 513 B.R. 720, 726–27 (Bankr. W.D. Tenn. 2014) (describing provision of Operating Agreement as an *ipso facto* clause because it created a right that occurred only upon the triggering event of a member's bankruptcy filing); *LaHood v. Covey (In re LaHood)*, 437 B.R. 330, 336 (C.D. Ill. 2010) (concluding that "the provisions of the Operating Agreement purporting to place limitations or restrictions on Michael's interest as a result of his bankruptcy filing are unenforceable in this proceeding."); *Matter of Ry. Reorganization Estate, Inc.*, 133 B.R. 578, 582 (Bankr. D. Del. 1991) ("Clauses [that] purport to terminate, limit or otherwise modify a debtor's interest in its property upon the filing of a bankruptcy petition are unenforceable under the Code.").

Main now argues that because bankruptcy is not the sole trigger under the Assignment Agreement for assignment of the shares, the agreement does not contain an unenforceable *ipso facto* clause. Whereas in *Knapp, supra,* "the only reason for revocation testified to by the plaintiff's representative was the filing of the petition in bankruptcy, [therefore] revocation could not be effected in light of § 541(c)(1)(B)," *Knapp*, 137 B.R. at 585, the Assignment Agreement's Mandatory Event clause also allowed assignment upon several other events. Main particularly cites the "event" of "at such time as [Main] in its sole discretion shall otherwise determine to be in the best interest of the project or is otherwise appropriate." Doc. No. 31-2, p. 7 of 98.[3]

But Main did previously contend that Mr. Canuso transferred the shares to Wayne DiMarco on account of Mr. Canuso's bankruptcy filing and has not alleged that Mr. Canuso actually transferred the shares prepetition based on any other Mandatory Event. Indeed, Main attached the certification of Mr. Canuso to its response to the trustee's motion, in which Mr. Canuso states "One of the Mandatory Events was my personal bankruptcy, so consistent with my obligations to HWM and HNI, nominal ownership was transferred to Wayne DiMarco, the managing member of HWM at the time." Doc. No. 31-2, ex. 4, ¶ 45. Thus, that continues to be its contention. That the shares *could* be transferred based on some other Mandatory Event is irrelevant. Accordingly, to the extent that Main contends that it transferred the shares upon the Assignment Agreement's Mandatory Event of a bankruptcy filing, that transfer is ineffective to remove the shares from property of the estate.

**C. The trustee can avoid any transfer of shares pursuant to section 544(a)**

The trustee cites section 544(a)(2) as allowing him to avoid the defendant's claimed right of ownership of the shares. Section 544(a)(2) provides:

---

[3] Since the project is dead, Main would only be operating under the "otherwise appropriate" part of that clause, and one wonders if assignment of shares tied to a defunct project ever would be "otherwise appropriate."

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by— . . .
>
> > (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists[.]

11 U.S.C. § 544(a)(2). *See In re Sullivan*, 254 B.R. 661, 667 (Bankr. D.N.J. 2000) (explaining that in New Jersey, a judgment creditor who has executed on the judgment debtor's property, even if the executed is returned unsatisfied, has priority over a judgment creditor who failed to execute prepetition); *Matter of Feldman*, 54 B.R. 659, 660 (Bankr. D.N.J. 1985) (stating that "it is clear a creditor holding an unexecuted levy occupies a lower priority than a creditor who has already executed upon his lien, even if said execution remains unsatisfied.").

The trustee argues that his hypothetical lien creditor status can avoid "any interest held by any of the Defendants that was unperfected as of the Petition Date." Doc. No. 30-2, p. 12.[4]

None of the parties contends that Main is a judgment creditor of Mr. Canuso, so presumably the trustee bases his avoidance on Main having some unperfected interest in the shares.

Perfection of an interest in shares of stock in New Jersey is governed by the Uniform Commercial Code Articles 8 and 9. *See* N.J.S.A. 12A:9-305(c) (local law governs perfection of security interests in investment property). A security interest in investment property[5] may be

---

[4] The trustee first argued "Under N.J. Stat. Ann. § 46:26A-12, as a matter of law, the Trustee's rights to the Shares are superior to defendants' unrecorded claimed ownership interest." Doc. No. 30-2, p. 12. However, section 46:26A-12 pertains to recording to perfect title to real property:

a. Any recorded document affecting the title to real property is, from the time of recording, notice to all subsequent purchasers, mortgagees and judgment creditors of the execution of the document recorded and its contents.

b. A claim under a recorded document affecting the title to real property shall not be subject to the effect of a document that was later recorded or was not recorded unless the claimant was on notice of the later recorded or unrecorded document.

c. A deed or other conveyance of an interest in real property shall be of no effect against subsequent judgment creditors without notice, and against subsequent bona fide purchasers and mortgagees for valuable consideration without notice and whose conveyance or mortgage is recorded, unless that conveyance is evidenced by a document that is first recorded.

[5] N.J.S.A. 12A:9-102(a)(49) defines "investment property" as, *inter alia,* "a security, whether certificated or uncertificated. . . ." N.J.S.A. 8-102(a)(15) defines security as "except as otherwise provided in 12A:8-103, means . . . a share . . . (a) which is represented by a security certificate in bearer or registered form, or the transfer of which may be registered upon books maintained for that purpose by or on behalf of the issuer; . . . (c) which: . . . (B) is a medium for investment and by its terms expressly provides that it is a security governed by this chapter." N.J.S.A. 12A:8-103(a) provides that "a share or similar equity interest issued by a corporation, business trust, joint stock company, or similar entity is a security." N.J.S.A. 12A:9-102(b) provides that the definitions in 12A:8-102 apply in Article 9.

perfected by filing, delivery, or control. N.J.S.A. 12A:9-312(a), 12A:9-313(a), 12A:9-314(a).[6] "A purchaser has 'control' of a certificated security in bearer form if the certificated security[7] is delivered to the purchaser." N.J.S.A. 12A:8-106(a). Delivery of a certificated security to a purchaser occurs when:

> (1) the purchaser acquires possession of the security certificate;
>
> (2) another person, other than a securities intermediary, either acquires possession of the security certificate on behalf of the purchaser or, having previously acquired possession of the certificate, acknowledges that it holds for the purchaser; or
>
> (3) a securities intermediary acting on behalf of the purchaser acquires possession of the security certificate, only if the certificate is in registered form and is (a) registered in the name of the purchaser, (b) payable to the order of the purchaser, or (c) specially indorsed to the purchaser by an effective indorsement and has not been indorsed to the securities intermediary or in blank.

N.J.S.A. 12A:8-301(a).

Main did not allege that it recorded the Assignment Agreement or took actual delivery of the shares. Nursery has denied that it holds the shares certificate for Main. The shares are not registered in Main's name, payable to the order of Main, or specially indorsed to Main. To the extent that Main might claim that Nursery's notice of the Assignment Agreement and failure to object to it amounts to "acknowledging that it holds for the purchaser," the court notes that Main admits that Nursery only received an unexecuted copy of the version of the Assignment Agreement that did not include the irrevocable power of attorney language allegedly giving Main a security interest in the shares (to be discussed below).

At the hearing on the Motion for Summary Judgment, Main argued that it found no support, in either Article 2 (negotiable instruments) or 9, for the proposition that a Power of Attorney coupled with an interest must be recorded. But it is Main's alleged prior interest in the shares that the trustee seeks to avoid and that needed to be perfected by recordation to preserve Main's priority.

Where holders of an irrevocable power of attorney, authorizing the transfer of a liquor license if the debtor defaulted under an agreement of sale of that license, did not record that power of attorney, the bankruptcy court held that the power of attorney represented a secret lien unenforceable in bankruptcy:

---

[6] N.J.S.A. 12A:9-312(a) provides "(a) Perfection by filing permitted. A security interest in chattel paper, negotiable documents, instruments, or investment property may be perfected by filing." N.J.S.A. 12A:9-313(a) provides "A secured party may perfect a security interest in certificated securities by taking delivery of the certificated securities under 12A:8-301." N.J.S.A. 12A:9-314 provides "A security interest in investment property, deposit accounts, letter-of-credit rights, electronic chattel paper, or electronic documents may be perfected by control of the collateral under 12A:7-106, 12A:9-104, 12A:9-105, 12A:9-106 or 12A:9-107."

[7] "'Certificated security' means a security that is represented by a certificate." N.J.S.A. 12A:8-102(a)(4).

> The Scottos argue that the irrevocable power of attorney executed in conjunction with the initial transfer of the liquor license to the debtors grants them a secured interest in that license. . . . [H]owever innovative the Scottos were in drafting the power of attorney for purposes of securing the indebtedness, that interest was never perfected by filing the instrument or financing statements in the appropriate locations. As such, the power of attorney is a secret lien and is therefore unenforceable in bankruptcy.

*In re Kelco Enterprises*, 86 B.R. 471, 475 (Bankr. W.D. Pa. 1988). *See In re Ultimate Rest. Grp., Inc.*, 144 B.R. 291, 294 (Bankr. W.D. Pa. 1992) (failure to perfect interest in proceeds of liquor license prevented entity from compelling transfer of license).

Thus, the trustee as a hypothetical execution creditor could avoid Main's asserted interest in the shares. But Main now argues that it instead has a security interest in the shares that the trustee cannot avoid.

### D. Power of attorney coupled with an interest

This is the new heart of Main's position regarding the shares. Main now points to the language in the executed Assignment Agreement that confers upon it an irrevocable power of attorney coupled with an interest, creating a security interest in the shares that survives the bankruptcy filing.[8] The trustee disagrees that the language of the Assignment Agreement created such a security interest. The court agrees with the trustee.

Main appears to have abandoned the argument that the shares were transferred to Wayne DiMarco prepetition (though it attaches the earlier certifications of Mr. Canuso and Wayne DiMarco that assert that Canuso transferred the shares to Wayne), which the court has now rejected based on section 541(c)(1)(B). It also expressly stated that it no longer will press the nominee theory that it argued in its Motion for Summary Judgment, where it was the principal and Mr. Canuso the agent. Doc. No. 31, p. 22. Instead, now it is the agent with Mr. Canuso the principal.

Though in general, agency contracts are not enforceable by agents, *Sarokhan v. Fair Lawn Mem'l Hosp., Inc.*, 83 N.J. Super. 127, 133 (App. Div. 1964), "where an authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is part of a security, there, unless there is an expressed stipulation that it shall be revocable, it is, from its very nature and character, in contemplation of the law, irrevocable, whether it is expressed to be so upon the face of the instrument conferring the authority or not." *Chapman v. Bates*, 61 N.J. Eq. 658, 665 (1900).

Here, the executed Assignment Agreement provided "The special and limited power of attorney of the Assignee provided for herein is a special power of attorney, coupled with an

---

[8] The trustee points out that, though untimely, on February 26, 2021, Main filed a proof of claim asserting an <u>unsecured</u> claim. *See* Doc. No. 31-4, p. 10, ¶ 38 (Response to Plaintiff's Statement of Material Facts and Counterstatement/Supplemental Material Facts). Main does not specify how it is a creditor of Mr. Canuso.

interest, is irrevocable, shall survive the death of the Assignor, but is expressly limited to those matters herein set forth." Doc. No. 15, pp. 60-61, ¶ 5. Thus, if Main held a power of attorney coupled with an interest, the trustee could not revoke it. But it does not.

The problem lies in the lack of an interest in the shares. Main asserts that the "coupled interest" is the ownership of the shares, citing the formation of Main and the investment of $3 million by HPIG to purchase the shares. Doc. No. 31-1, p. 27. It argues that the "irrevocable power of attorney was . . . to guarantee control over the ownership of the Shares because Main agreed to indemnify Debtor if Debtor failed to abide by the obligations in the Stock Purchase and Shareholder Agreements. . . ." *Id.* "Finally, pursuant to its express language, the critical objective of the Assignment Agreement was to grant Main an irrevocable power of attorney, coupled with an interest, so that it could control Share ownership." *Id.*, p. 28.

But Main admits the flaw in its argument right there. A right to control transfer of the shares is not an interest *in* the shares. The former is merely a contract right given to an agent that the principal can revoke. And the trustee here does revoke it. Said another way, to the extent that the trustee succeeded to Mr. Canuso's ownership of the shares *subject to* Main's right to assign the shares, the trustee, as the principal in this principal-agent contract, can revoke the agency.[9]

Under the Assignment Agreement, Main could assign Mr. Canuso's rights to the shares and under the SPA and SHA to some other qualified investor, which investor then would own the shares. Main would never own the shares (which it could not, as that would breach the Stock Purchase and Shareholders' Agreements, as Main is not an S Corp "qualified investor"). The Third Circuit Court of Appeals explains the difference:

> An assignment purports to transfer ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf. . . . A power of attorney, on the other hand, "does not transfer an ownership interest in the claim," . . . , but simply confers on the agent the authority to act "on behalf of the principal[.]"

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454–55 (3d Cir. 2018) (internal citations omitted).

Various courts have explained:

> [A power of attorney coupled with an interest] requires that the agent have some interest, such as a security interest, in the subject matter of the agency independent of the power conferred upon him by the principal. *Sarokhan v. Fair Lawn Mem'l Hosp., Inc.,* 83 N.J. Super. 127, 136, 199 A.2d 52 (App. Div.), [*certif. denied,* 42 N.J. 501 (1964)]. An interest merely in "the proceeds which will arise from the

---

[9] By contrast, the trustee cannot revoke the restriction on the shares that they only be held by a qualified investor for S Corporation purposes, as New Jersey law permits the enforcement of "reasonable" restrictions on the transfer of shares against the holder of the restricted securities and any successor or transferee of the holder. N.J.S.A. 14A:7-12(2), including enforcement of a restriction that "[e]xists for the purpose of maintaining the status of the corporation as an electing small business corporation under subchapter S of the United States Internal Revenue Code." N.J.S.A. 14A:7-12(3)(e).

exercise of the power" of the agency is not sufficient for this purpose. *Ibid.* (quoting 3 *Am. Jur.2d Agency* § 62.) The test of an agency coupled with an interest is defined in 2 *Williston on Contracts* § 280 (3d ed.) at pp. 301-302: "Does the agent have an interest or estate in the subject matter of the agency independent of the power conferred, or does the estate or interest accrue by or after the exercise of the power conferred? If the former, it is an agency coupled with an interest, or as has been suggested, a proprietary power; if the latter, it is not." *Id.* at 135.

*Prime Properties, Inc. v. Estate of Curry*, A-2221-07T2, 2008 WL 5245303, at *2 (N.J. Super. Ct. App. Div. Dec. 18, 2008) (holding that listing agreement of real estate broker created an interest only in the proceeds of the sale of the subject property, thus it did not survive the death of the principal property owner). *See In re Columbia Shoe Co.*, 289 F. 465 (2d Cir. 1923):

> The power of attorney of April 27th added nothing to title. If anything, it denied title. It merely permitted Spiegel to act as attorney in fact for Columbia Shoe Company, so as to enable Spiegel to make collections and to deposit in the corporation's name and to draw drafts, etc., in its name. This power of attorney was not in any sense a power coupled with an interest. Such a power, of course, presupposes a legal interest in the res over which the power is to be executed. 31 Cyc. 1043. In this case, the situation as to revocation of the power of attorney would, of course, have been different, if Spiegel had had title to the accounts.

*Id.*, at 467.

Examples of powers of attorney coupled with an interest, from cases cited by Main itself, include:

- To sell a ship taken as security upon a loan of money. *Durbrow v. Eppens*, 46 A. 582, 584 (N.J. 1900).

- For a creditor to sell lands to pay the debtor's debt outs of the proceeds of sale. *Id.*

- Management contract "tied up with his purchase of a large amount of stock in the corporation." *Sarokhan v. Fair Lawn Mem'l Hosp., Inc.*, 83 N.J. Super. 127, 137 (App. Div. 1964).

- Mortgage company given 20-year rent-free lease in building together with exclusive agency to manage the building in return for services in procuring a lease and loan through which the building was constructed. *Id.*

- Proxy and power of attorney given by stockholder to form new corporation, make available all properties controlled by the stock of the old corporation, manage the new corporation, and sell the stock and/or exchange it for stock in the new corporation, exercise all powers granted over the new shares of stock, and hypothecate or sell the old or new shares. *Chapman v. Bates*, 61 N.J. Eq. 658 (1900).

- Power of attorney for bank to sell stock of company, given as collateral for personal loan to company's majority owner. *Murtland Holding Co. v. Egg Harbor Commercial Bank*, 123 N.J. Eq. 117, 196 A. 230 (1938). Note that in *Murtland*, the borrower delivered the stock certificate to the bank with a written assignment and an irrevocable power of attorney bearing the company's seal. *Id.*, 118-19.

Examples of powers of attorney found <u>not</u> to include an interest:

- Contract between doctor and hospital giving doctor power to organize and establish hospital and serve as medical director and director of surgery, but with no right to a percentage of the income, no financial interest to secure, and "know-how" in organizing hospital not equivalent to one who invented a business. *Sarokhan v. Fair Lawn Mem'l Hosp., Inc.*, 83 N.J. Super. 127, 138 (App. Div. 1964).

- Listing agreement that created an interest only in the proceeds of the sale of the subject property did not survive death of the principal. *Prime Properties, Inc. v. Estate of Curry*, A-2221-07T2, 2008 WL 5245303, at *2 (N.J. Super. Ct. App. Div. Dec. 18, 2008).

Though Main's 50% owner, HPIG, allegedly put up the money for the shares, the Power of Attorney only lets Main move the shares from one owner to another: Main, or rather, HPIG, does not get the right to sell the shares to its own account. Nowhere is it suggested that HPIG *loaned* the money to Mr. Canuso. Instead, references have been made to an Operating Agreement of Main (<u>never</u> submitted to this court), pursuant to which HPIG was to receive a minimum of $5,498,000 plus $877,168 from any cash flow to Main from the Venture, and only after that would Can 2 or Flower Time Developers, LLC be eligible to receive any distributions from the operation of Main. Doc. No. 15-3, p. 38, ¶ 47. That appears to be how HPIG would recoup its investment. With the project not going forward (the last extension of Main's option ended December 31, 2011, Doc. No. 13-1, p. 59), possibly HPIG is trying to find some other means of refund. Unfortunately for HPIG's investors, the Assignment Agreement only gave Main control of who would own the shares, not the ownership itself and gave it no authority to sell the shares. As Mr. Canuso purchased the shares to his own account, Main had no prior interest in the shares independent of the power of attorney granting it the right to transfer the shares.

The trustee contrasts a "power coupled with an interest" with a "naked power." The former is "[a] right or power to do some act, together with an interest in the subject matter on which the power is to be exercised." Doc. No. 32, p. 5, quoting Black's Dictionary of Law, 5th Edition. The trustee argues that Main instead has a "naked power," defined as "[o]ne which is simply collateral and without interest in the donee, which arises when, to a mere stranger, authority is given of disposing of an interest, in which he had not before, nor has by the instrument creating the power, any estate whatsoever." *Id.*, pp. 5-6. In other words, a naked power is merely the power to move someone else's property.

The trustee states that Main's "naked power was extinguished by the bankruptcy filing."[10] He is correct that "New Jersey follows the general rule that a power of attorney may be revoked at

---

[10] He provides no citation for this assertion, despite stating "Case law makes it clear that naked power does not survive the Debtor's bankruptcy filing." Doc. No. 32, p. 6.

the will of the principal unless it is coupled with an interest." *Estate of Norman A. Helfan Litig. v. Capital Mgmt. Grp., Inc.*, CIV. A. 00-1026, 2000 WL 1522857, at *6 (E.D. Pa. Oct. 13, 2000). *See In re St. Felix*, 436 B.R. 786, 789 (Bankr. E.D. Pa. 2010) ("The general rule in Pennsylvania has long been that a principal has the right to revoke the authority granted to an attorney-in-fact under a power of attorney; however, a power of attorney that is 'coupled with an interest' is *irrevocable*.") (emphasis in original); *In re Universal Motor Exp., Inc.*, 72 B.R. 208, 210 (Bankr. W.D.N.C. 1987) ("While contracts of agency are revoked upon bankruptcy, an irrevocable power of attorney is not made unenforceable in bankruptcy if coupled with an interest in the subject property superior to that of the trustee in bankruptcy."); *Matter of Maplewood Poultry Co.*, 2 B.R. 550, 553 (Bankr. D. Me. 1980) (same). *See also Delbrueck & Co. v. Manufacturers Hanover Tr. Co.*, 609 F.2d 1047, 1052 (2d Cir. 1979) ("Thus, where an agent has a specific contract which is vitiated by the principal's bankruptcy, the agency is terminated."); *Lewis Sagal & Co. v. Smith*, 35 F.2d 182, 183 (3d Cir. 1929) (contracts of agency are revoked by adjudication of a principal in bankruptcy); *In re Columbia Shoe Co.*, 289 F. 465, 467 (2d Cir. 1923) ("When the petition was filed, the property of the bankrupt was at once in custodia legis, and the power of attorney was revoked by operation of law."); *In re Crane Sheet Metal Works, Inc.*, 265 F. Supp. 124, 125 (N.D. Ala. 1967) ("When the petition was filed, the property of the Bankrupt was at once in custodia legis, and the power of attorney was revoked by operation of law. Petitioner, therefore, had no power or right to interfere with the Bankruptcy Court by taking any property, actually or constructively in possession of the Bankruptcy Court.").

Main argues that it must have an irrevocable power of attorney since the Assignment Agreement tracked suggested language for such in the New Jersey Transaction Guide:

If power is to be irrevocable because coupled with interest . . . :

a. State that power is irrevocable.

b. State that power is coupled with interest and indicate specifics of that arrangement, for example:

(1) State that power forms part of contract and is security for money or performance of acts of attorney-in-fact that are deemed valuable . . .

(2) State that power is given for valuable consideration from attorney-in- fact . . . .

8 New Jersey Transaction Guide § 151.130 (2021).

Doc. No. 31-1, pp. 28-29.

But while the Assignment Agreement recites that Main paid the $3 million for the shares, it does not state that the Power of Attorney is security for that money. It in fact states "In consideration of $10 ($10.00) and other good and valuable consideration). . . ." Doc. No. 31-2, p. 23 of 98. And again, it only allows Main to direct transfer of the shares: it does not give Main an interest in the shares themselves, as when one gives a power of attorney to a creditor to sell the principal's property to pay a debt. Main is not Mr. Canuso's creditor.

If anyone were Canuso's creditor, it would be HPIG, the 50% member of Main that allegedly contributed all of the $3 million. But the Assignment Agreement appointed Main as agent, not HPIG. So, to the extent that Main argues the Power of Attorney coupled with an interest represented collateral for the $3 million purchase price of the shares, half of Main – LLCs owned by Mr. Canuso and his wife – allegedly did not contribute any of those funds and thus were not entitled to a security interest in the shares.

## CONCLUSION

The trustee seeks a declaration that (1) Mr. Canuso is the owner of the shares in Nursery, (2) the "Mandatory Event" clauses in the Assignment Agreements are *ipso facto* clauses and are statutorily invalid and unenforceable, and (3) the trustee is entitled to avoid any interest of the defendants in the shares as a levying judgment creditor pursuant to 11 U.S.C. § 544.

As a matter of law, to the extent that Main alleged that the shares were transferred on Mr. Canuso's filing of bankruptcy, that transfer is unenforceable pursuant to section 541(c)(1)(B), and therefore the trustee is entitled to judgment that the asserted transfer is invalid and unenforceable.

As the Assignment Agreement is not a power of attorney coupled with an interest, Main does not hold a security interest in the shares. Accordingly, the trustee is entitled to judgment as a matter of law that he can avoid any interest of the defendants in the shares as a levying judgment creditor pursuant to 11 U.S.C. § 544.

The court previously held that Mr. Canuso purchased the shares in his own name, not as an agent of Main. As the shares were neither transferred upon the bankruptcy filing, and Main does not have the irrevocable right to transfer them or a security interest in them, and there are no genuine issues of material fact since, even if the Assignment Agreement is authentic, it does not affect Mr. Canuso's individual ownership of the shares, the trustee is entitled to judgment as a matter of law that Mr. Canuso is still the owner of the shares in Nursery.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: May 26, 2021